UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JAMES MATTHEW ROBINSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Civil Case No. 5:25-148-KKC-CJS |
| v. | ) | |
| | ) | |
| WARDEN ABIGAIL CAUDILL, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Petition for Writ of Habeas Corpus filed by Petitioner James Matthew Robinson.  (R. 1).  Pursuant to local practice, this matter has been referred to the undersigned for consideration and preparation of a Report and Recommendation under 28 U.S.C. § 636(b).  *See* Rule 10, Rules Governing § 2254 Cases in the United States District Courts ("A magistrate judge may perform the duties of a district judge under these rules, as authorized by 28 U.S.C. § 636.").  After conducting a preliminary review of Robinson's Petition (R. 1) and Amended Petition (R. 10) as required by Rule 4 of the Rules Governing Section 2254 Cases, the Court concludes Robinson's Petition is untimely.  Accordingly, it will be recommended that Robinson's Petition **be dismissed** and that the other pending motions **be denied as moot.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In 2013, Robinson was indicted by a grand jury in Lincoln County, Kentucky, of seven counts of use of a minor in a sexual performance, seven counts of first-degree sexual abuse, and one count of first-degree sodomy.[1]  No. 13-CR-22; No. 13-CR-63-2 (hereinafter "CourtNet

---

[1] Robinson was originally indicted on seven counts of use of a minor in a sexual performance and seven counts of first-degree sexual abuse on April 26, 2013.  *See Commonwealth v. Robinson*, No. 13-CR-22, Lincoln Circuit Court, Lincoln County, Kentucky.  However, on October 26, 2013, in a separate

Dockets");[2] *Robinson v. Commonwealth*, No. 2014-SC-661-MR, 2016 WL 3370939, at *1 (Ky. June 16, 2016); *Robinson v. Commonwealth*, No. 2017-CA-929-MR, 2019 WL 856758, at *1 (Ky. Ct. App. Feb. 22, 2019).  After the case proceeded to trial, the court directed verdicts of acquittal on two of the seven counts of use of a minor in a sexual performance.  *Robinson*, 2016 WL 3370939, at *1.  The jury found Robinson guilty of the remaining thirteen counts.  *Id.*; CourtNet Dockets.  On August 8, 2014, Robinson was sentenced to concurrent sentences of life imprisonment for sodomy, twenty years' imprisonment for each count of use of a minor in a sexual performance, ten years' imprisonment for five counts of first-degree sexual abuse, and five years' imprisonment for two counts of first-degree sexual abuse.  *Robinson*, 2016 WL 3370939, at *1; CourtNet Dockets.

On December 29, 2014, Robinson appealed as a matter of right to the Kentucky Supreme Court.  *See* CourtNet Dockets.  Robinson raised the following issues: (1) whether he was entitled to a directed verdict on four counts of use of a minor in a sexual performance; (2) whether it was reversible error that the court allowed a child to testify via closed-circuit television outside his physical presence; (3) whether he could be convicted of both use of a minor in a sexual performance and first-degree sexual abuse without violating double jeopardy; and (4) whether he was entitled to a mistrial.  *See Robinson*, 2016 WL 3370939, at *1.  Notably, Robinson did not challenge the conviction upon which he was sentenced to a term of life.  *Id.*  On June 16, 2016, after finding that the trial court abused its discretion by permitting the child to testify via closed-

---

criminal action, Robinson was indicted of first-degree sodomy as well.  *See Commonwealth v. Robinson*, No. 13-CR-63-2, Lincoln Circuit Court, Lincoln County, Kentucky.  Those actions were later consolidated by agreed order.  *Id.*; No. 13-CR-22.

[2] The Court takes judicial notice of the relevant state court dockets.  *See Chase v. Macauley,* 971 F.3d 582, 587 n.1 (6th Cir. 2020) (taking judicial notice in a § 2254 case of information from another court's website) (citing *Lyons v. Stovall,* 188 F.3d 327, 332 n.3 (6th Cir. 1999) ("[F]ederal courts may take judicial notice of proceedings in other courts of record.")).

2

circuit television, the Kentucky Supreme Court reversed Robinson's conviction for one count of sexual abuse that might have been based on that child's testimony. *Id.* at *7, 9. Robinson's other convictions were, however, upheld. *Id.* at *9.

On January 9, 2017, Robinson moved *pro se* to vacate his judgment and sentence under the Kentucky Rule of Criminal Procedure ("RCr") 11.42. *See* CourtNet Dockets; *Robinson*, 2019 WL 856758, at *1. Robinson argued that he received ineffective assistance of counsel at both the trial and appellate levels. *Robinson*, 2019 WL 856758, at *1. After denying Robinson's motion for an evidentiary hearing, the trial court denied his RCr 11.42 Motion. *See id.*; CourtNet Dockets. Robinson appealed that denial on May 30, 2017. CourtNet Dockets. On February 22, 2019, the Kentucky Court of Appeals affirmed the trial court's decision on the merits. *Robinson*, 2019 WL 856758, at *3.

On July 17, 2024, Robinson filed a *pro se* motion for relief under Kentucky Civil Rule of Procedure ("CR") 60.02(e) and (f). *See* No. 13-CR-22. After noting Robinson's motion was filed ten years after the conclusion of his trial, the Lincoln Circuit Court on October 10, 2024, denied the motion as untimely. *Id.* Robinson did not appeal this decision.

On April 29, 2025, the Clerk of this Federal District Court received and docketed Robinson's *pro se* Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254. (R. 1). Attached thereto was a sworn and notarized statement from Robinson's brother and fellow Kentucky Department of Corrections inmate, Timothy Wayne Robinson ("Timothy Robinson"). (R. 1-2). Timothy Robinson explained that he prepared the habeas petition because Petitioner Robinson does not understand the controlling rules or laws. (*Id.*). Alongside the Petition, the Clerk docketed a Motion for Appointment of Counsel (R. 3) and a Motion for Equitable Tolling (R. 4). In the latter, Petitioner Robinson argues his Petition should be considered timely because he sustained a

3

head injury in an automobile accident that rendered him incompetent and, thus, he is entitled to equitable tolling. (*See* R. 4 at Page ID 25).

On May 1, 2025, while conducting a preliminary review of the Petition, the Court ordered that by June 2, 2025, Robinson was to return a completed AO Form 241 to clarify, among other things, the timeliness of his § 2254 Petition. (*See* R. 6). On May 13, Robinson filed his completed AO Form 241 (R. 10), wherein he reiterates that his Petition is timely because the limitations period was equitably tolled as a result of his mental incompetence (*id.* at Page ID 73-74). Below Robinson's signature, Timothy Robinson explained that he prepared this form as well because of his brother's brain injury. (*Id.* at Page ID 75). There were also three letter attachments, the first of which was signed by fellow inmate Douglas Krusley and the other two were signed by Timothy Robinson. (R. 10-1; R. 10-2; R. 10-3). Krusley explained that he has known Robinson for five months and in that time, it has become clear that Robinson "is severely handicapped with a mental disability." (R. 10-1). Krusley stated further that Robinson "has the mind set of a 6 year old" and does not understand why he is still incarcerated. (*Id.*). Krusley also noted that he has assisted in the preparation of some of Robinson's filings. (*Id.*). Further, Timothy Robinson also indicated that he has prepared many documents filed on Robinson's behalf. (R. 10-2).

On July 21, 2025, Robinson sent a letter to the Clerk informing of efforts to obtain medical records to substantiate his alleged incompetence. (R. 14). Robinson made clear that he composed that letter himself. (*Id.* ("I James Matthew Robinson am writing this very important letter")). On September 3, Robinson moved (in another document apparently prepared by his brother) for an evidentiary hearing with respect to the merits of his § 2254 Petition. (*See* R. 15). Attached thereto were medical records indicating that Robinson did, in fact, sustain a head injury following a motor vehicle accident. (*See* R. 15-1). That record does not, however, indicate to what extent, if any, Robinson's mental capacity was diminished by the injury. (*Id.*). On October 6, Robinson then

4

moved for an evidentiary hearing to determine whether equitable tolling is applicable. (*See* R. 16). Robinson again made sure to clarify that he prepared this motion. (*Id.* at Page ID 109 ("I James Matthew Robinson am writing this <u>ONE-TIME</u> special MOTION LETTER.")).

Robinson also filed motions seeking leave to amend the Habeas Petition. (*See* R. 7; R. 8). Although the second such motion indicates that Timothy Robinson and Krusley prepared the filing (R. 8 at Page ID 45), it is apparent that Robinson himself drafted the first motion (*see generally* R. 7).[3] In these motions, Robinson contends that the prior inconsistent statements of Z.R., a fact witness against him at trial, as well as the testimony of Dr. Sugarman, an expert who testified at trial, prove that he is actually innocent. (*See* R. 7; R. 8). As such, Robinson requests an evidentiary hearing and argues that he is entitled to equitable tolling. (R. 7; R. 8). For the reasons discussed herein, it will be recommended that Robinson's § 2254 Petition **be dismissed,** that no certificate of appealability issue, and that the pending motions be denied as moot.

## II.    ANALYSIS

Petitioner James Matthew Robinson's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 was docketed on April 29, 2025, more than eight years after his judgment became final. Although Robinson filed two motions collaterally attacking his judgment and sentence in state court, his Petition was still untimely by more than five years. Nevertheless, Robinson argues that he is entitled to equitable tolling due to mental incompetence or actual innocence. For the reasons discussed herein, equitable tolling is unwarranted here.

---

[3] It is worth noting that, as of the date of this Report and Recommendation, Robinson has filed a number of other motions, including: (a) a Motion for Leave to Proceed *In Forma Pauperis* (R. 9); (b) a Motion for Appointment of Counsel (R. 12); (c) a Motion to Consider (R. 17) his § 2254 Petition; (d) a Motion for Addendum Argument (R. 20); (e) a Motion for Addendum Argument (R. 22); and (f) a Motion to Add Addendum Argument (R. 23). Based on the record before the Court, it is apparent that Robinson himself drafted and filed each of these motions.

5

### A.    Timeliness of Robinson's Petition

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner generally has only one year in which to file a federal petition for writ of habeas corpus. *See* 28 U.S.C. § 2244(d).  The AEDPA one-year limitations period begins to run from the latest of four circumstances:

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2244(d)(1)(A)-(D).

In this case, subsection (A) applies, with the limitations period beginning to run from the date on which Robinson's judgment of conviction became "final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A); *see Gonzalez v. Thaler*, 565 U.S. 134, 149-50 (2012).  The Lincoln Circuit Court sentenced Robinson on August 8, 2014.  Robinson timely appealed, and the Kentucky Supreme Court affirmed his conviction on June 16, 2016.[4]   Thus, Robinson's conviction became final under § 2244 on September 14, 2016,

---

[4] While Robinson failed to timely file a notice of appeal of the Lincoln Circuit Court's August 8, 2014 Judgment, *see* RCr 12.04(3) (providing that parties to a criminal action have 30 days from judgment to appeal), the Kentucky Supreme Court affirmed Robinson's conviction on the merits without addressing his failure to timely file a notice of appeal, *see Robinson*, 2016 WL 3370939, at *1.  Thus, Robinson's judgment became final on September 14, 2016, notwithstanding his untimely notice of appeal.  *See Jimenez v. Quarterman*, 555 U.S. 113, 120 n.4 (2009) (holding that "where a state court has in fact reopened direct review, the conviction is rendered nonfinal for purposes of § 2244(d)(1)(A) during the pendency of the reopened appeal"); *see also Johnson v. United States*, 457 F. App'x 462, 465 (6th Cir. 2012).

6

after the expiration of his time to file a petition for a writ of certiorari with the United States Supreme Court. *See Jimenez*, 555 U.S. at 119 ("[D]irect review cannot conclude for purposes of 2244(d)(1)(A) until the 'availability of direct appeal to the state courts,' and to this Court has been exhausted." (quotations omitted)). Therefore, Robinson had until September 14, 2017, to file a federal habeas petition. *See* 28 U.S.C. § 2244(d)(1). His Petition was filed more than seven years later; consequently, it is untimely on its face.

### B.    Statutory Tolling

Despite its untimeliness, Robinson's § 2254 Petition might survive the one-year filing bar if the limitation period is statutorily tolled by his state postconviction filings, pursuant to 28 U.S.C. § 2244(d)(2). The one-year period is tolled by the amount of time that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id*. "[A]n application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," including "time limits upon its delivery." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (emphasis original). Notably, however, the tolling provision does not "'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)).

On January 9, 2017, Robinson properly filed a post-conviction motion to vacate, set aside or correct sentence in Lincoln Circuit Court pursuant to RCr 11.42. *See* RCr 11.42(10) ("Any motion under this rule shall be filed within three years after the judgment becomes final").[5] Thus,

---

[5] Kentucky law sets a three-year statute of limitations on postconviction motions brought following a judgment. *See* RCr 11.42(10). Although petitioners are given three years after the judgment becomes final to file a motion to vacate in the Kentucky circuit court, consistent with 28 U.S.C. § 2244(d)(2), AEDPA's one-year limitation period to file a federal habeas petition is tolled only if the state post-conviction motion is filed within the federal one-year limitation period. *See Thompson v. Chandler*, 55 F. App'x 758, 759 (6th Cir. 2003) (rejecting a claim that the habeas limitation period was extended by the three-year period under the state law for filing a postconviction motion under RCr 11.42).

when Robinson filed his RCr 11.42 Motion on January 9, 2017—117 days after his judgment became final—248 days remained within which he could timely file a federal habeas petition. The clock resumed on March 25, 2019, which was 31 days after the February 22, 2019, Kentucky Court of Appeals decision. *See* Kentucky Rules of Appellate Procedure 40(g)(1) ("An opinion of the Court of Appeals becomes final on the 31st day after the date of its rendition unless a petition under RAP 43 or a motion for discretionary review under RAP 44 has been timely filed or an extension of time has been ranted for one of those purposes."). The remaining time thus expired on November 28, 2019.[6] *See* 28 U.S.C. § 2244(d)(2). Robinson's instant federal § 2254 Petition was filed over five years too late and is thus untimely. *Vroman*, 346 F.3d at 602.

### C.    Equitable Tolling

Even if out of time, untimeliness can be excused if equitable tolling is applicable. *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (holding that the one-year statute of limitations for federal habeas petitions set forth in the AEDPA is subject to equitable tolling). However, the doctrine of equitable tolling is to be applied "sparingly," with the burden of proof placed on the party seeking its application. *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010). A habeas petitioner is entitled to equitable tolling only if he demonstrates the following two factors: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649. Robinson argues he is entitled to equitable tolling on two grounds: mental incompetence (*see* R. 4) and actual innocence (*see* R. 7; R. 8). The Court will address each in turn.

---

[6] Robinson's CR 60.02 Motion did not toll the AEDPA limitation because it was not properly filed. *See Johnson v. Brown*, No. 13-242-GFVT-JGW, 2013 WL 12358524, at *3 (E.D. Ky. Aug. 21, 2013) (holding that because a CR 60.02 motion was untimely filed, it did not toll the statute of limitations), *report and recommendation adopted*, 2016 WL 4261761 (Aug. 12, 2016). Still, even assuming this CR 60.02 motion was properly filed, it was filed after the statute of limitations had already lapsed; so, it cannot serve to toll the instant limitations period. *See id.*; *Vroman*, 346 F.3d at 602.

### 1.    Mental Incompetence

Although incompetence might give rise to equitable tolling, *see Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011), it "is not a *per se* reason to toll a statute of limitations," *McSwain v. Davis*, 287 F. App'x 450, 456 (6th Cir. 2008); *see also Ata*, 662 F.3d at 741.  Rather, the petitioner "must demonstrate that (1) he is mentally incompetent and (2) his mental incompetence caused his failure to comply with AEDPA's statute of limitations." *Ata*, 662 F.3d at 742.  Here, Robinson fails at the first step.

Robinson argues that equitable tolling is appropriate because he is mentally incompetent. (*See* R. 4 at Page ID 25; *see also* R. 10 at Page ID 73-74).  Specifically, he claims he has been mentally incompetent since 2004 when he sustained an injury in an automobile accident.  (R. 4 at Page ID 25).  To substantiate this claim, Robinson relies primarily on two filings.  First, in their statements attached to the Amended § 2254 Petition, Timothy Robinson and Krusley claim Petitioner Robinson is incompetent and incapable of prosecuting this action on his own.  (*See* R. 10-1; R. 10-2).  Second, Robinson filed medical records from a visit to the University of Kentucky Hospital following a 2004 motor vehicle accident.  (*See* R. 15-1).  The record does indicate that Robinson underwent brain surgery as a result of an injury he suffered in a car accident.  (*Id.*).  However, the medical record does not detail any issues with Robinson's mental acuity following the procedure.  (*Id.*).  There is also no indication in the Kentucky court record that Robinson is incompetent.[7]  *See* CourtNet Dockets.

At any rate, Robinson bears the burden of establishing his incompetence, *see Kitchen v. Bauman*, 629 F. App'x 743, 747 (6th Cir. 2015) ("As [the petitioner] presented no medical

---

[7] Robinson did move in Lincoln Circuit Court to inspect counseling records on November 12, 2013. *See* No. 13-CR-63-2.  However, it is unclear to what extent, if any, such records would support a finding of incompetence.  As such, this motion does not lend itself favorably toward a finding of incompetence.

evidence showing he was incompetent at any point [during the relevant period], he failed to carry his burden to demonstrate incompetency"), and the statements of Timothy Robinson and Krusley, without more, do not discharge that burden.  On the other hand, a review of the record reveals that Robinson has prepared and filed a number of documents in this action (R. 7; R. 11; R. 12; R. 14; R. 16; R. 17; R. 18; R. 20; R. 22; R. 23), and filed *pro se* RCr 11.42 and CR 60.02 Motions in the Lincoln Circuit Court, *see* CourtNet Dockets.  This significantly undermines Robinson's position that his mental incompetence prevented him from pursuing his rights.  *See Kitchen*, 629 F. App'x at 748 ("The fact that [the petitioner] was able to file a civil action in federal court challenging his confinement within the one-year limitations period demonstrates that any mental incompetency did not prevent him from pursuing his legal rights in a timely, albeit unsuccessful, manner.").

Nonetheless, Robinson argues that *Bills v. Clark*, 628 F.3d 1092 (9th Cir. 2010), is controlling.  (R. 4 at Page ID 26).  *Bills* provides the following standard for equitable tolling due to mental incompetence:

> (1) *First,* a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control, by demonstrating the impairment was so severe that either
>
>> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>>
>> (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) *Second,* the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

*Bill*, 628 F.3d at 1099-100.  Although the Sixth Circuit has applied the *Bills* test, *see Stiltner v. Hart*, 657 F. App'x 513, 521 (6th Cir. 2016), Robinson does not satisfy the standard.

To start, Robinson fails to demonstrate either facet of the first part of the test.  Indeed, Robinson cannot establish that he was "unable rationally or factually to personally understand the

10

need to timely file." He has made multiple filings discussing equitable tolling (*see, e.g.*, R. 4; R. 10), as such, he necessarily understands the need to timely file a habeas petition. Robinson also cannot show that he was "unable personally to prepare a habeas petition and effectuate its filing." Here, it is notable that other people prepared multiple documents filed of record in this action, including both his habeas petition and his amended habeas petition. (R. 1; R. 10; *see also* R. 8; R. 15; R. 21). And Timothy Robinson and Krusley state they assisted Robinson because he cannot prepare court filings on his own. (R. 10-1; R. 10-2). However, the record belies these assertions because Robinson has prepared and filed, *on his own behalf*, a number of documents in this action (R. 7; R. 11; R. 12; R. 14; R. 16; R. 17; R. 18; R. 20, R. 22, R. 23), and filed *pro se* postconviction challenges in state court, *see* CourtNet Dockets. In conjunction with the lack of evidence to establish Robinson's incompetence, the first prong of the *Bills* standard cannot be satisfied.

*Stiltner* provides a helpful benchmark here. The petitioner therein had an IQ of 62 (which is associated with intellectual disability), scored in the third percentile of a logical reasoning assessment, and could not identify the location of the prison in which he was housed. *Stiltner*, 657 F. App'x at 516. Two inmates who had known the petitioner for years prepared his habeas filings in their entirety, going as far as writing the return address on the mail filings because the petitioner was incapable. *Id.* at 517. One of the inmates even testified that the petitioner could not identify items on a canteen sheet, like coffee. *Id.* at 518. The Sixth Circuit observed the petitioner in *Stiltner* was "unable rationally or factually to personally understand the need to file and unable personally to prepare a habeas petition and effectuate its filing." *Id.* at 522 (internal quotations omitted). That is not the case where, as here, Robinson has prepared and filed several documents and prosecuted other collateral postconviction challenges in state court.

Even assuming the first prong of the *Bills* standard is satisfied, Robinson does not explain why he waited more than five years after the statutory period lapsed to file the instant petition.

11

And though there is no evidence to suggest Robinson had legal assistance before he filed his habeas petition,[8] that "is only part of the overall assessment of the totality of circumstances that goes into the equitable determination." *Stiltner*, 657 F. App'x at 524 (quoting *Bills*, 628 F.3d at 1101). On this record, there is not sufficient evidence to establish that, but for Robinson's mental state, he would have timely filed his § 2254 Petition. *See Stiltner*, 657 F. App'x at 525-26 ("*[G]iven the specific facts of this case*, in particular [the petitioner]'s severe mental incompetence—which left him unable to monitor the assistance he had in even the most basic ways—the district court erred in denying equitable tolling." (emphasis added)). Rather the opposite is true, as Robinson has made multiple filings in this case on his own (*e.g.*, R. 14), demonstrated an understanding of the need to timely file (*see* R. 4), and challenged *pro se* his sentence in state court, *see* CourtNet Dockets. Consequently, even if *Bills* provides the controlling standard, Robinson did not satisfy it, *see Bills*, 628 F.3d at 1099-100, and thus equitable tolling, based on Robinson's purported mental incompetence, is not warranted here, *see Kitchen*, 629 F. App'x at 748.

### 2.   Actual Innocence

Even where the traditional equitable tolling principles do not entitle a petitioner to relief, a showing of "actual innocence" may permit a court to assess the merits of an otherwise untimely petition. *Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005); *see also Jones v. May*, No. 1:23-CV-1866, 2025 WL 1398777, at *5 (N.D. Ohio May 14, 2025) (report and recommendation) ("There are generally two forms of equitable tolling available, traditional equitable tolling and tolling based on 'actual innocence.'"). Critically, in this context, "'actual innocence' means factual innocence,

---

[8] Both *Bills* and *Stiltner* clarified that legal assistance includes the assistance of a jailhouse lawyer, like Timothy Robinson. *Bills*, 628 F.3d at 1101; *Stiltner*, 657 F. App'x at 523. This is such because even the assistance of another inmate "makes it easier for a petitioner to timely file a habeas petition." *Stiltner*, 657 F. App'x at 523. At any rate, there is nothing on the record to indicate that Robinson received legal assistance before his brother prepared his habeas petition.

not mere legal insufficiency." *Hubbard v. Rewerts*, 98 F.4th 736, 743 (6th Cir. 2024) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). This "remedy is reserved for only the most extraordinary case." *Id.* at 747 (collecting cases). To discharge this daunting burden, a petitioner must "show that 'it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 742 (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013)). To do so, petitioners "must put forth some type of reliable evidence that is exonerative in nature. That evidence need not *conclusively prove* his exoneration to make the gateway showing, but it must, at minimum, go towards his innocence." *Id.* (emphasis original).

In support of establishing "actual innocence," Robinson points to two pieces of evidence. (*See* R. 7; R. 8). Robinson first argues Z.R., a witness against him in his underlying case, made statements inconsistent with his trial testimony prior to trial. (*See* R. 7 at Page ID 38-39). In particular, Robinson alleges that Z.R. told multiple individuals that he had not sexually abused him or touched him inappropriately. (R. 1 at Page ID 5). Based on this, Robinson contends that no reasonable jury could have found him guilty. (R. 7 at Page ID 39; R. 8 ag Page ID 50). This, however, falls short of the exacting "actual innocence" standard.

To start, there is nothing on the record that indicates Z.R. seeks to recant or change his trial testimony. Even assuming Z.R. does seek to change his story now, courts are often unpersuaded by witnesses who change their story multiple times. *See, e.g.*, *Davis v. Bradshaw*, 900 F.3d 315, 330 (6th Cir. 2018) ("Avery's recantation amounts to another change in his story. This alone could make it more difficult for a reasonable juror to find it reliable."); *see also Hubbard*, 98 F.4th at 749 ("A vacillating witness who changes his story multiple times is often presumed to be unreliable."). If Z.R. were to recant his trial testimony, that would mark the second time his story waivered according to Robinson. (*See* R. 7). That "alone makes it difficult to credit his account

13

unless reliable corroborating evidence indicates his truthfulness." *Hubbard*, 98 F.4th at 749. Robinson offers no such corroborating evidence here.

Robinson next submits the testimony of Dr. Sugarman, a pediatrician who purportedly appeared as an expert witness at Robinson's trial. (R. 8 at Page ID 46). Robinson alleges Dr. Sugarman testified that although she examined all the victims and there were no signs of penetration, that was not necessarily inconsistent with sexual abuse. (*Id.*). Even accepting Robinson's allegation at face value, it falls short of exonerative evidence. "Actual innocence" requires "new reliable evidence." *See Schlup v. Delo*, 513 U.S. 298, 324 (1995). Evidence that was presented at trial is not considered "new" under this standard. *See Hubbard*, 98 F.4th at 743 (citing *Souter v. Jones*, 395 F.3d 577, 595 n.9 (6th Cir. 2005)). Because Robinson puts forward trial testimony, it necessarily cannot discharge his burden under the "actual innocence" standard. *Id.* Still, even if this testimony constitutes new evidence, it is far from exonerative. At best Dr. Sugarman's testimony undermined the state's case. At worst, it supported it. In any event, Robinson failed to come forth with evidence such that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *McQuiggin*, 569 U.S. at 386. Thus, as Robinson failed to establish "actual innocence," equitable tolling is unwarranted here and it will thus be recommended that his untimely petition be dismissed.

### D.    Evidentiary Hearing

Robinson requests an evidentiary hearing to resolve three separate issues: (1) his purported incompetence (*see* R. 16); (2) his alleged "actual innocence" (*see* R. 7); and (3) the merits of his § 2254 Petition (*see* R. 15). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

14

With respect to the issue of mental incompetence, a hearing is granted only where the petitioner sets forth "sufficiently specific allegations [that] would entitle [him] to equitable tolling on the basis of mental incompetence." *Id.* For the same reasons equitable tolling is inapplicable here, there need not be an evidentiary hearing. *See Kitchen*, 629 F. App'x at 749 ("For the same reason the district court did not err in denying [the petitioner] equitable tolling, it did not err in denying his request for an evidentiary hearing. Petitioner has not alleged facts showing that his purported mental incompetency caused him to file an untimely habeas petition."). Robinson failed to demonstrate incompetence, or that his purported incompetence caused him to untimely file his petition.

*Stiltner* aids in this determination as well. In that case, an evidentiary hearing was only granted because the petitioner placed concrete and substantial evidence of his incompetency in the record. *See Stiltner v. Brown*, 5:13-cv-203-KKC-HAI, at R. 22 therein (E.D. Ky. 2014). The petitioner cited to prison records that indicated he had a reading level of 1.8 and a math level of 2.1, was committed to a mental health institution for several years, "received electro shock therapy and has been found incompetent by a report in 1961 and again in a report in 2006, [and showed] he suffer[ed] from ongoing mental" disabilities. *Id.* Unlike the petitioner in *Stiltner*, Robinson's only proof of incompetence is a medical record indicating that he underwent brain surgery in 2004 and statements from his brother and Krusley. Even if substantiated at an evidentiary hearing, this evidence would not support a finding of incompetence. *See Stiltner*, 657 F. App'x at 525-26.

As for the issue of whether Robinson showed actual innocence, the Court must consider the actual innocence standard in determining whether an evidentiary hearing is appropriate. *See Turner v. Romanowski*, 409 F. App'x 922, 930 (6th Cir. 2011). Because Z.R.'s testimony would be unreliable and Dr. Sugarman's testimony is not considered "new," an evidentiary hearing would do little, if anything, to support a finding of actual innocence.

15

Finally, regarding the merits of Robinson's Petition, the Court must take into account the standards provided by AEDPA. *See Schriro*, 550 U.S. at 474. As discussed at length above, Robinson's Petition is untimely under AEDPA. *See* 28 U.S.C. § 2244(d)(1). Therefore, the merits of the Petition can afford Robinson no federal habeas relief. As such, an evidentiary hearing is not warranted.

## III.     CERTIFICATE OF APPEALABILITY

Robinson is not entitled to a certificate of appealability (COA). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Proceedings in the United States District Courts, the District Court must issue or deny a COA when it enters a final order adverse to the applicant. A COA may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* When, on the other hand, a habeas petition is denied "on procedural grounds without reaching the petitioner's underlying constitutional claim," a COA should only issue if the petitioner makes a showing, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Robinson's § 2254 Petition or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly,

16

it will be recommended that a COA be denied upon the District Judge's entry of a final order in this matter.

## IV.    CONCLUSION AND RECOMMENDATION

For the reasons stated herein, **IT IS RECOMMENDED** that:

1)    Robinson's Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus by a Person in State Custody (R. 1; R. 10) **be dismissed;**

2)    a certificate of appealability **be denied** by the District Judge in conjunction with the Court's entry of its final order in this matter;

3)    the pending motions (Rs. 3, 4, 7, 8, 15, 16, 17, 20, 22, 23) **be denied as moot;** and

4)    this case **be stricken** from the active docket of this Court.

Attention is directed to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rules Governing Section 2254 Proceedings for the United States District Courts, Rule 8(b). <u>Specific written objections to any or all findings or recommendations in this Report and Recommendation must be filed within</u> **fourteen (14) days** <u>after being served with a copy of this Report and Recommendation for determination, *de novo*, by the District Judge</u>. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Judge and Sixth Circuit Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Signed this 27th day of February, 2026.



Signed By:

<u>Candace J. Smith</u>

United States Magistrate Judge

G:\Judge-CJS\DATA\habeas petitions\2254PrelimsSOL\25-148-KKC Robinson R&R.docx